**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHEKINAH R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 C 344 |
| | ) | |
| ANDREW M. SAUL, | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Shekinah R. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a memorandum explaining why the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record, the Court agrees with Plaintiff that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff applied for DIB on December 13, 2012, alleging that she became disabled on August 21, 2012 due to complications from West Nile encephalitis, including: short-term memory loss; weakness, tingling, and numbness in the left leg; fatigue; stuttering; and lost train of thought. (R. 169, 202). Born in 1979, Plaintiff was at all relevant times a

---

[1] Commissioner Saul is substituted for his predecessor, Nancy A. Berryhill, pursuant to FED. R. CIV. P. 25(d).

younger individual (i.e., 18-49 years old). (R. 169). She lives with her husband and three children, and completed one year of college and obtained a cosmetology degree. (R. 750). Plaintiff spent several years working as a medical coder and billing specialist between February 2000 and September 2008, at which point she took a position as a vocational college instructor. (R. 203, 753, 755). She held that job until August 21, 2012 when she was hospitalized with West Nile encephalitis. (R. 300-426). Since the hospitalization, Plaintiff occasionally performs hairdressing services for friends and family but it does not rise to the level of substantial gainful activity. (R. 751).

The Social Security Administration denied Plaintiff's application at all levels of review. She appealed to the district court and the parties agreed the case should be remanded to the Commissioner for further proceedings. (R. 853-55). On January 13, 2017, the Appeals Council vacated the final decision of the Commissioner and remanded the case to administrative law judge David R. Bruce (the "ALJ") with instructions to "offer [Plaintiff] the opportunity to submit additional evidence and for a hearing, address the evidence submitted to the Appeals Council, take any further action needed to complete the administrative record, and issue a new decision." (R. 869-70). The ALJ held a supplemental hearing on April 28, 2017 and heard testimony from Plaintiff, who was represented by counsel, from Plaintiff's husband, and from vocational expert Ronald Malik (the "VE"). (R. 742-95). Following the hearing, the ALJ submitted written interrogatories to Robert K. Heidrich, Psy.D., an independent psychological expert. (R. 1325). Dr. Heidrich provided written responses on June 29, 2017 and the ALJ made them part of the record without objection. (R. 876-77, 1330-38).

On September 19, 2017, the ALJ found that Plaintiff was not disabled from the August 21, 2012 alleged disability onset date through February 17, 2015. During that period, Plaintiff suffered from the severe impairments of cognitive disorder, memory loss, depression, and anxiety, but they did not meet or equal any listed impairment and she retained the residual functional capacity ("RFC") to perform a significant number of light jobs available in the national economy. (R. 879-85). As of February 18, 2015, however, Plaintiff's impairments, which now included a diagnosis of post-traumatic stress disorder ("PTSD"), became severe enough to medically equal Listing 12.06 and rendered her disabled through the date of the decision. (R. 885-86). Plaintiff now appeals the portion of the ALJ's decision denying her benefits.

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in setting February 18, 2015 as the onset date of her disability; (2) improperly evaluated the statements from Plaintiff and her husband regarding the limiting effects of her symptoms; and (3) made a flawed RFC determination that failed to adequately account for Plaintiff's mental limitations and fatigue. For the reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of the onset date of Plaintiff's disability.

## DISCUSSION

**A.  Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's

3

judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover disability benefits under the Social Security Act, a claimant must establish that she is disabled. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

4

expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C. Analysis**

**1. Disability Onset Date**

Plaintiff argues that the case must be remanded because the ALJ erred in finding her disabled only as of February 18, 2015. "Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).[2] In the case of a slowly progressive impairment, SSR 83-20 "does not require the impairment to have reached the severity of a listed impairment before onset can be established." *Newburn v. Colvin*, No. 13-CV-1265-CJP, 2015 WL 603219, at *8 (S.D. Ill.

---

[2] SSR 83-20 was rescinded on October 2, 2018 and replaced by SSR 18-1p and SSR 18-2p. The parties agree that since SSR 83-20 was in effect at the time of the ALJ's September 19, 2017 decision, it governs the analysis here.

5

Feb. 12, 2015). Rather, "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death." *Briscoe*, 425 F.3d at 352 (quoting SSR 83–20 at *3). In determining the onset date of a disability of a nontraumatic origin, the ALJ must consider the following three factors: "(1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical evidence and all other relevant evidence." *Id.* at 353 (quoting SSR 83-20, at *2).

The ALJ determined that Plaintiff became disabled on February 18, 2015, the date Peter Dodzik, Psy.D., completed a neuropsychological evaluation showing Plaintiff suffered from a variety of cognitive deficits. (R. 885). Based on a series of mental testing in January and February 2015, Dr. Dodzik reported that Plaintiff exhibited deficits in visual spatial abilities and nonverbal reasoning, impaired memory, diminished reaction time, impulse control problems, difficulties with attentional capacity and control, and moderate to severe anxiety and depression. (R. 1158-59). He also diagnosed Plaintiff with PTSD stemming from the 2012 West Nile virus diagnosis, and opined that it would be impossible for her to "return to a working capacity commensurate with her previous employment." (R. 1160). Relying in large part on this evaluation, agency consultant Dr. Robert Heidrich concluded that Plaintiff's mental impairment was equal to listing 12.06 "at least as far back as 2/18/15, when the neuropsychological evaluation was completed." (R. 1336). The ALJ gave both of these opinions great weight. (R. 883, 886).

Plaintiff agrees that she was disabled at the time of Dr. Dodzik's evaluation but claims her disability began years earlier in 2012. In finding Plaintiff capable of working

6

prior to February 18, 2015, the ALJ gave great weight to a neuropsychological evaluation of Plaintiff conducted by Frank Mordini, Psy.D., on December 18, 2012. (R. 453-59, 883). This is troubling because when Dr. Dodzik reviewed Dr. Mordini's assessment in 2015, he identified numerous areas where the testing results were substantially the same. (R. 1157). Plaintiff's verbal and nonverbal skills were "commensurate with previous testing . . . and suggest chronic deficits in visual spatial measures." (R. 1158). She also exhibited similar memory deficits and language skills, made similar omissions when engaged in complex figure drawing, and was only "somewhat worse" on measures of inattentiveness and impulsivity. (*Id.*). Both doctors noted ongoing problems with depression and anxiety that contributed to deficits in concentration. While Dr. Dodzik diagnosed Plaintiff with PTSD, Dr. Mordini expressed concern that she would engage in "maladaptive patterns of coping" with her anxiety leading to her feeling "impatient, hostile, and moody." (R. 458, 1159). Both doctors also opined that Plaintiff could not handle her previous employment. (R. 459, Dr. Mordini stating Plaintiff "would very likely have much difficulty handling her previous job duties as an instructor"; R. 1160, Dr. Dodzik stating it would be "impossible" for Plaintiff to "return to a working capacity commensurate with her previous employment.").

Given the many similarities in the two neuropsychological evaluations, it is not entirely clear why the ALJ found Plaintiff not disabled in December 2012. The ALJ stated that Plaintiff admitted in her January 18, 2013 Function Report that she could "perform activities such as cooking meals, completing household chores, driving a car, going shopping, and managing finances." (R. 241-42, 883). Yet the ALJ ignored the limitations Plaintiff described in performing these activities. For example, it took her over an hour to

7

prepare even the smallest meals, she could only do one household chore per day with several breaks, she often forgot to pay bills, and she mishandled money and made calculating errors "all of the time" resulting in overdraft fees. (R. 241-43). The ALJ should have considered these restrictions and explained why they support an ability to work prior to February 18, 2015. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities.").

The ALJ also pointed to psychological evaluations from Barbara Thomas, Ph.D., which he said routinely showed good cooperation, good concentration, intact memory, appropriate mood and affect, and good judgment from September 5, 2014 through January 2015. (R. 655, 657, 660, 664, 667, 671, 882). The problem is that Dr. Thomas continued to reiterate those same observations long after February 18, 2015 when the ALJ found Plaintiff disabled. (R. 674, 1110, 1114, 1125, 1129, 1133, 1138, 1142, 1146, 1245, 1250, 1254, 1259, 1281, 1285, 1289, 1294, 1298, 1303, 1309, 1313, 1317). Similarly, Dr. Thomas identified numerous cognitive problems in September 2014 that Dr. Heidrich found supportive of disability in February 2015. For example, Dr. Heidrich relied on an October 7, 2016 note from Dr. Thomas as evidence that Plaintiff exhibited "cognitive problems, recent memory problems, planning and organization problems, history of one suicide attempt and one panic attack, diagnosis of mild cognitive disorder and depression," and "decrease in social interaction, fatigue, [and] insomnia." (R. 1279-80, 1334). All of these deficits appear in Dr. Thomas's treatment notes from September 5, 2014 forward as well. (*See, e.g.*, R. 651, 664-65).

The only clear difference the ALJ identified between Plaintiff's condition before and after February 18, 2015 is Dr. Dodzik's diagnosis of PTSD. (R. 879, adding PTSD to

8

Plaintiff's list of impairments as of February 18, 2015; R. 885, noting "[t]he doctor now diagnosed PTSD."). Even before the diagnosis, however, Plaintiff's physicians routinely agreed that she suffered from anxiety, hostility, impatience, and moodiness stemming from her 2012 infection with West Nile virus. In December 2012, Dr. Mordini noted Plaintiff's concerns about "the status of her health" and "ongoing preoccupation with her health," and said that difficulties in controlling her anxiety could "lead her to engage in maladaptive patterns of coping." (R. 458). On March 10, 2014, treating neurologist Reena Ghode, M.D., stated that Plaintiff exhibited anxiety with some PTSD features, which likely explained her cognitive deficits. (R. 562). Shortly thereafter, on August 4, 2014, treating neurologist Kenneth W. Holmes, M.D., described Plaintiff's "major issue" as "anxiety, stress." (R. 640). Furthermore, Dr. Thomas opined from September 2014 onward that Plaintiff's psychiatric problems "occurred after trauma, in association with emotional stress and post WNV [West Nile virus]." (R. 651). It is not clear why Plaintiff's problems with anxiety only became disabling once she was diagnosed with PTSD as opposed to some earlier time. The Commissioner claims the ALJ reasonably adopted the onset date established by Dr. Heidrich, but Dr. Heidrich merely opined that Plaintiff was disabled *at least* as far back as February 18, 2015, without considering the possibility of an earlier onset date. (R. 1336).

Viewing the record as a whole, the ALJ did not build a logical bridge between the evidence and his conclusion that Plaintiff's disability began on February 18, 2015. This error requires that the case be remanded for further evaluation.

### 3. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments, but in reevaluating the disability onset date the ALJ also should take the opportunity to reassess the testimonial evidence and the combined effects of Plaintiff's impairments.

### **CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion for summary judgment [25] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: August 15, 2019

_____
SHEILA FINNEGAN
United States Magistrate Judge